Kristina N. Girard (State Bar No. 236762)
JACKSON LAW INTERNATIONAL
1901 First Avenue, Suite 208
San Diego, California 92101-2382
Telephone: 619-663-5620
Facsimile: 619-663-5621
E-Mail: kgirard@jacksonlawinternational.com

Attorneys for Plaintiff
Aleksandrs Antonenko

## U.S. DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALEKSANDRS ANTONENKO, individually,<br><br>                    Plaintiff,<br><br>          v.<br><br>DELOS PRODUCTIONS, INC., a California Corporation; CAROL ROSENBERGER, an individual; NAXOS OF AMERICA, INC., a New Jersey Corporation; ELCHIN MURADOV, an individual, and DINARA ALIEVA, an individual,<br><br>                    Defendants. | Case No.: 2:17-cv-4320<br><br>**COMPLAINT FOR**<br><br>**1. FALSE ENDORSEMENT AND UNFAIR COMPETITION (15 U.S.C. § 1125(a))**<br>**2. CLAIM FOR BOOTLEGGING (17 U.S.C. § 1101)**<br>**3. COMMON LAW CLAIM FOR COMMERCIAL MISAPPROPRIATION**<br>**4. STATUTORY CLAIM FOR COMMERCIAL MISAPPROPRIATION (CAL. CIVIL CODE § 3344)**<br>**5. CONVERSION**<br>**6. FRAUD**<br>**7. VIOLATION OF CAL. BUS. AND PROF. CODE § 17200**<br>**8. QUASI-CONTRACT**<br><br>**DEMAND FOR JURY TRIAL** |

## <u>COMPLAINT</u>

Plaintiff, ALEKSANDRS ANTONENKO, through undersigned counsel, brings this action against Defendants, DELOS PRODUCTIONS, INC.; CAROL ROSENBERGER;

COMPLAINT

NAXOS OF AMERICA, INC.; ELCHIN MURADOV; and DINARA ALIEVA and alleges as follows:

## JURISDICTION, PARTIES, AND VENUE

1.      This is a civil action arising under federal law, the Lanham Act of 1946, 15 U.S.C. §§ 1051, et seq. This Court has original jurisdiction over the federal claims pursuant to 28 U.S.C. §§ 1331 and 1338(a).

2.      Additionally, original jurisdiction is conferred upon this Court pursuant to 28 U.S.C. § 1332, based upon the diversity of citizenship.  The matter in controversy exceeds the sum or value of seventy-five thousand dollars ($75,000), exclusive of interest and costs, and is between citizens of a foreign state and citizens of a territorial state of the United States, thereby establishing original jurisdiction pursuant to 28 U.S.C. § 1332.

3.      This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) over any claims arising under state law because those claims are so related to the claims in the action within the Court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

4.      Plaintiff, Aleksandrs Antonenko (hereinafter referred to as "Antonenko"), is a citizen of Riga, Latvia.

5.      Defendant, Delos Productions, Inc. (hereinafter referred to as "Delos" or, collectively, as "Defendants"), is a suspended California corporation with its principal place of business located at 212 26th Street, Suite 145, Santa Monica, California 90402.

6.      Defendant, Carol Rosenberger (hereinafter referred to as "Rosenberger" or, collectively, as "Defendants"), is a citizen of California, residing at 721 Adelaide Place, Santa Monica, California 90402.

COMPLAINT

7.      Defendant, Naxos of America, Inc. (hereinafter referred to as "Naxos' or, collectively, as "Defendants"), is a New Jersey corporation, also incorporated in Tennessee, with its principal place of business located at 1810 Columbia Avenue, Suite 28, Franklin, Tennessee 37064-3977.

8.      Upon information and belief, Defendant, Elchin Muradov (hereinafter referred to as "Muradov" or, collectively, as "Defendants"), is a citizen of Azerbaijan residing at 3-ya Tverskaya-Yamskaya Street, 10, Office 4, Russian Federation, Moscow 1250477.

9.      Upon information and belief, Defendant, Dinara Alieva, (hereinafter referred to as "Alieva" or, collectively, as "Defendants"), is a citizen of Azerbaijan residing at Lincoln House, 300 High Holborn, London WC1V 7JH, United Kingdom.

10.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because: Delos "resides" and Rosenberger resides in this judicial district for venue purposes under 28 U.S.C. § 1391(c); a substantial part of the events or omissions giving rise to the claims occurred in this district; and a substantial part of property that is the subject of the action is situated in this district.

## NATURE OF THE CASE

11.     This case arises from willful infringements and misappropriations of Antonenko's name, likeness, voice, and rights of publicity by Defendants in the production of a compact disk ("CD").

12.     Defendants have defied Antonenko's demands that they refrain from wrongfully exploiting his name, likeness, and voice by marketing, promoting, distributing and selling a certain CD entitled "Alieva & Antonenko" (hereinafter the "Demo CD") that was released by the Defendants on or after June 9, 2015.

COMPLAINT

**Antonenko**

13.     Antonenko is an acclaimed opera singer who has enjoyed a successful career as a performer in the world's leading opera houses and theaters.  His career in the public eye began in 2002 after winning the Paul Sakss Prize, followed by the Grand Latvian Music Prize in 2004, leading to an international career that has advanced at an unprecedented pace.

14.     Antonenko has performed at some of the most prestigious venues in the world, such as La Scala Theater in Milan, the Metropolitan Opera in New York, the Paris Opera House, the Bolshoi Theater, the Vienna State Opera, the Royal Opera House in London, the Deutsche Oper Berlin, the Opéra de Monte Carlo, the Latvian National Opera, the Opera de Bordeaux, The Deutsche Oper am Rhein, the Royal Swedish Opera in Stockholm, and Den Norske Opera & Ballett in Oslo.

15.     Among his operatic repertoire are some of the most demanding and challenging roles, such as Giuseppe Hagenbach in La Wally, Chevalier Des Grieux in Manon Lescaut, Gabriele Adorno in Simon Boccanegra, Sergei in Shostakovich's Lady Macbeth of Mtsensk District, Turiddu in Cavalleria Rusticana, Don José in Carmen, Cavaradossi in Tosca, Ismaele in Nabucco, Dimitri in Boris Godunov, Radames in Aida, Prince in Rusalka, Luigi in Il Tabarro, Kalaf in Turandot, and Otello among many others.

16.     Antonenko's name and identity, and his unique, well-known style and tenor have become famous to a substantial segment of the public in the United States and internationally, and are therefore valuable commercial assets that symbolize Antonenko and his level of quality and creativity associated with his artistic performances, vocal integrity, and goodwill associated therewith.

COMPLAINT

**Alieva**

17.     Defendant Alieva is an operatic soprano who began singing at major opera houses in 2010.

18.     Although Antonenko and Alieva were on friendly terms in the opera community, Alieva had never been scheduled to perform with Antonenko at any venue.

19.     To advance her career and gain more recognition, Alieva recorded a solo CD in 2013 on the Naxos music label, and, in January, 2014, Alieva released a solo "debut CD" on the Delos music label.

20.     Around January, 2014, Alieva approached Antonenko about performing a duet in Kaunas, Lithuania with the Kaunas City Symphony Orchestra to help her with creating a demo CD.

21.     In the music industry, a demo is utilized by an artist to advance their career.  It is not meant for commercial distribution or release in the public domain and/or for profit. Furthermore, a legitimate music label should ensure that a written contract exists for the use of any property rights.

22.     Kaunas, Lithuania is a short drive from Antonenko's home, and is a favorite city of Antonenko's vocal coach; so, Antonenko was pleased to help a young, less experienced artist.

23.     On or about July 20, 2014, Antonenko travelled with his vocal coach to Kaunas, Lithuania.

**Muradov**

24.     Upon arriving in Kaunas, Antonenko met with Alieva and had an initial meeting with Muradov and the conductor, Constantine Orbelian.

25.     Upon information and belief, Defendants Muradov and Alieva are husband and wife.

26.     At all relevant times, Defendant Muradov acted as a talent agent and/or promoter for Alieva.

27.     In exchange for singing the duet over a period of three days, Antonenko received a small cash payment, which was paid by Muradov and delivered by Constantine Orbelian.

28.     Upon information and belief, Constantine Orbelian is a citizen of California and the Director of Artists and Repertoire (A&R) for Delos, responsible for talent scouting, artistic development of recording artists, and a liaison between artists and the record label.

29.     The relationship between Constantine Orbelian and Delos was not disclosed and was otherwise unknown to Antonenko at the time of recording in July, 2014.

**Delos, Rosenberger, & Naxos**

30.     Delos is an American music label founded in 1973 that specializes in classical music.

31.     Upon information and belief, Delos is responsible for managing brands, trademarks, licensing, coordinating production, manufacturing, distribution, marketing, promotion and enforcement of copyright for sound recordings and development of new artists.

32.     Delos is currently operated by Rosenberger who is its Chief Executive Officer.

33.     Defendant Rosenberger was a pianist who made over 30 recordings under the Delos label and worked alongside the founder of Delos until her passing.

34.     Naxos is a worldwide distributor of recordings made by Delos.  Delos describes its relationship to Naxos as a "distribution partnership" that enables Delos to "extend its marketing reach, and tap into the world's most efficient music distribution system."

COMPLAINT

**GENERAL ALLEGATIONS**

35.     In October, 2014, Antonenko agreed to pose for photographs with Alieva for the cover of the Demo CD.

36.     At no time did he approve any cover, tray cards, or other materials to be included with the Demo CD that contained a music label, bar code, or other insignia of commercial reproduction, or that contained other recordings.

37.     After recording the Demo CD, Alieva contacted Antonenko in January 2015 about singing with her at an International Women's Day concert in Moscow.

38.     Antonenko declined to perform with Alieva at this event or in any public venue.

39.     In or about February, 2015, Antonenko was invited to dinner by Muradov and Alieva during his travels to Berlin, Germany for professional engagements.

40.     During the dinner, Muradov was aggressive about business proposals and potential collaborations to generate money, and offered to sell the Demo CD through his agency.

41.     Antonenko expressly declined all offers from Muradov.

42.     On or after June 9, 2015, Delos released and began marketing, promoting, distributing and selling the Demo CD using the title "Alieva & Antonenko."

43.     The Demo CD contains Delos' identifying number DE 3477, and was offered for sale by Delos and by Naxos.

44.     The Demo CD contains a color tray card depicting Antonenko's image and his name.

45.     The Demo CD also contains a color insert promoting Alieva and two solo recordings available for purchase with Delos' identifying number DE 3462 and DV 7007.

46.     In addition, Muradov and Alieva began advertising and promoting the Demo CD at her appearances and on her website (the commercially distributed / sold CD shall hereinafter be referred to as "the Bootleg CD").

47.     Defendants were trading on Antonenko's likeness and reputation to generate interest in the CD and in prior recordings of Alieva in order to increase sales.

48.     In September, 2015, Antonenko discovered, while performing Otello at the Metropolitan Opera in New York, that the Bootleg CD was being sold, when he was approached by fans asking him to sign a copy of "Alieva & Antonenko" purchased in the Met Opera Shop.

49.     On September 29, 2015, Antonenko's talent agency notified Delos and Rosenberger via electronic mail that an infringement and misappropriation of Antonenko's name, likeness, voice, and rights of publicity had occurred by distribution and sale of the original Demo CD.

50.     In an effort to reach an early resolution, Antonenko agreed to accept a modest sum, which was less than his typical fee for appearances, in exchange for relinquishing his rights to the CD.

51.     A series of electronic mail exchanges followed.

52.     On October 6, 2015, Delos responded through Rosenberger that the proposal was acceptable, and submitted a draft agreement to be signed by Muradov, Delos and Antonenko, offering to make payment upon receipt of Antonenko's banking information and signature.

53.     On October 7, 2015, Delos wrote again through Rosenberger and stated that Muradov would pay the fee demanded.

COMPLAINT

54. On October 8, 2015, Antonenko's agent provided his bank account information and requested revisions to the draft agreement on the issue of pre-approval of promotional activities and advertisements.

55. After several more emails from Antonenko's agent inquiring about the status, Delos, through Rosenberger, finally responded on October 20, 2015, advising that Delos was in agreement, but referring Antonenko to Muradov for payment.

56. According to Delos, Muradov is the owner of the Demo CD recording.

57. There is no written agreement that evinces a transfer or relinquishment from Antonenko to Delos, Naxos, or Muradov to use Antonenko's name, likeness, recording, or rights of publicity.

58. Furthermore, there was no conduct by Antonenko that could give rise to an implied transfer or relinquishment from Antonenko to Delos, Naxos, or Muradov to use Antonenko's name, likeness, recording, or right of publicity.

59. On April 3, 2017, Delos through Rosenberger was served with a written letter from Antonenko's legal counsel to cease and desist from any further unauthorized production, use, distribution, sale, and/or advertisement of the "Alieva & Antonenko" Demo CD and/or recording, and to cease and desist from further misappropriation or exploitation of Antonenko's name, voice, image and/or likeness.

60. Receipt of the cease and desist letter was acknowledged through counsel to Delos. Unfortunately, Delos took the position through its counsel that Antonenko had relinquished all asserted rights in the Demo CD.

61. Shortly thereafter, counsel to Delos advised that Delos would discontinue further promotion of Antonenko as an artist.

COMPLAINT

62.     To date, however, the Demo CD "Alieva & Antonenko" is being distributed, advertised, and sold by Naxos, and is being promoted, advertised, and sold by Muradov and Alieva.

### FIRST CLAIM FOR RELIEF
### False Endorsement and Unfair Competition
### 15  U.S.C. § 1125(a)

63.     The allegations set forth in the introductory paragraphs describing the parties, the nature of the action and the general allegations are incorporated herein by reference.

64.     Antonenko is a critically acclaimed opera singer who is in great demand throughout the world.  Within a decade, he has built an esteemed career, such that his name is distinctive and has acquired a secondary meaning in the public mind with the service he provides as an operatic tenor.

65.     Delos, Muradov and Alieva intended to deceive Antonenko by luring him to Kaunas, Lithuania under the pretense that he was merely recording a demo CD for Alieva to use in securing opera engagements.

66.     Unbeknownst to Antonenko, the conductor was working for Delos in an effort to promote her under the Delos music label and the Naxos label, and further that Delos and Muradov intended to commercially produce, distribute, promote, and sell the Demo CD for profit as "Alieva & Antonenko."

67.     The wrongful use of Antonenko's name, likeness, voice, and persona gives the false impression that he has endorsed the recording and the quality of the recording for commercial production, distribution, promotion, marketing, and sale.

68.     Additionally, the wrongful use of Antonenko's name, likeness, voice, and persona gives the false impression that he has endorsed the other solo recordings made by Alieva under

the Delos label, which recordings are promoted within the Demo CD jewel case, and which appear in print advertising and the website offerings and/or promotions by Delos, Naxos, and Alieva.

69.     Antonenko has been or is likely to be injured by the false impression that he endorses a recording that was performed for the purpose of making a Demo CD, and that he endorses other recordings made by Alieva that he has not reviewed or approved.

70.     Wherefore, Plaintiff, Aleksandrs Antonenko, respectfully requests damages, including, but not limited to all such damages recoverable, including, but not limited to, actual damages, the value of all gains, profits, advantages, benefits, and consideration derived by Defendants' from and as a result of their commercial use of Antonenko's name, voice, photograph and likeness, costs of the action, costs of the action, attorneys' fees, prejudgment interest, and treble damages, and for such other relief as this Court may deem just and appropriate against all Defendants.

### SECOND CLAIM FOR RELIEF
**Claim for Bootlegging**
**17   U.S.C. § 1101**

71.     The allegations set forth in the introductory paragraphs describing the parties, the nature of the action and the general allegations are incorporated herein by reference.

72.     The live musical duet between Antonenko and Alieva was recorded in the form of a Demo CD in Kaunas, Lithuania in July of 2014.

73.     In February of 2015, Defendants sought permission from Antonenko to distribute and/or sell the recording to the general public for which Antonenko declined permission.

COMPLAINT

74.     Thereafter, on or after June 9, 2015, Defendants, nevertheless, began marketing, distributing, and/or selling copies of the live musical performance to the general public without Antonenko's consent via the Bootleg CD.

75.     As a result of this unauthorized distribution and sale of Antonenko's performance via the Bootleg CD, Antonenko sustained resulting injury and damages.

76.     Such distribution and sale was knowing and willful.

77.     Pursuant to subsection (3) of 17 U.S.C. § 1101, anyone who without the consent of the performer distributes or sells the sounds of a live musical performance in a copy shall be subject to the remedies, and liable for the damages, as set forth within 17 U.S.C. § 502-505.

78.     17 U.S.C. § 503 provides that the Court may order the impounding of all copies of the Bootleg CD made in violation of Antonenko's right thereto.

79.     Since 1997, Antonenko has appeared in numerous opera productions and performances at internationally acclaimed opera houses around the world. Consequently, his public recognition as an opera singer has increased as has the market value of his name, voice, image and/or likeness.

80.     17 U.S.C. § 504 provides that the performer may recover actual damages suffered by him as a result of the infringement, as well as any profits of the infringer that are attributable to the infringement.

81.     Alternatively, 17 U.S.C. § 504 provides that the performer may elect at any time prior to the rendering of final judgment, that he be allowed to recover an award of statutory damages for all infringements in the action, which in the case of willful infringement may be as high as $150,000.00.

82.     17 U.S.C. § 505 provides for the recovery of attorney's fees.

COMPLAINT

83.     Wherefore, Plaintiff, Aleksandrs Antonenko, respectfully requests that the Court impound all copies of the Bootleg CD made in violation of Antonenko's right thereto, as well as all such damages recoverable, including, but not limited to actual damages, the value of all gains, profits, advantages, benefits, and consideration derived by Defendants' from and as a result of their commercial use of Antonenko's name, voice, photograph and likeness, costs of the action, the option of electing statutory damages, costs of the action, attorney's fees, and prejudgment interest, and for such other relief as this Court may deem just and appropriate against all Defendants.

### THIRD CLAIM FOR RELIEF
**Common Law Claim for Commercial Misappropriation**

84.     The allegations set forth in the introductory paragraphs describing the parties, the nature of the action and the general allegations are incorporated herein by reference.

85.     The live musical duet between Antonenko and Alieva was recorded in the form of a Demo CD in Kaunas, Lithuania in July of 2014.

86.     In February of 2015, Defendants sought permission from Antonenko to market, distribute and/or sell the recording to the general public for which Antonenko declined permission.

87.     Thereafter, on or after June 9, 2015, Defendants, nevertheless, began marketing, distributing, and/or selling copies of the live musical performance to the general public without Antonenko's consent.

88.     The Bootleg CD that was produced and that has been, and continues to be, marketed, distributed and/or sold by Defendants contained a photograph of his likeness on the cover and his actual musical performance thereon.

COMPLAINT

89.     Accordingly, Defendants used Antonenko's identity, and thereby appropriated Antonenko's name or likeness, to their commercial advantage without Antonenko's consent.

90.     As a result of this unauthorized distribution and sale of Antonenko's performance, Antonenko sustained resulting injury and damages.

91.     Wherefore, Plaintiff, Aleksandrs Antonenko, respectfully requests all such damages recoverable, including, but not limited to actual damages, the value of all gains, profits, advantages, benefits, and consideration derived by Defendants' from and as a result of their commercial use of Antonenko's name, voice, photograph and likeness, costs of the action, costs of the action, prejudgment interest, and for such other relief as this Court may deem just and appropriate against all Defendants.

## FOURTH CLAIM FOR RELIEF
### Statutory Claim For Commercial Misappropriation (Cal. Civ. Code § 3344)

92.     The allegations set forth in the introductory paragraphs describing the parties, the nature of the action and the general allegations are incorporated herein by reference.

93.     The live musical duet between Antonenko and Alieva was recorded in the form of a Demo CD in Kaunas, Lithuania in July of 2014.

94.     In February of 2015, Defendants sought permission from Antonenko to market, distribute, and/or sell the recording to the general public for which Antonenko declined permission.

95.     Thereafter, on or after June 9, 2015, Defendants, nevertheless, began marketing, distributing, and/or selling copies of the live musical performance to the general public without Antonenko's consent.

96.     Defendants knowingly used Antonenko's name, voice, photograph, and likeness in the commercial marketing, distribution, and sale of the Bootleg CD.

COMPLAINT

97.     There is a direct connection between the use of Antonenko's name, voice, photograph, and likeness and the commercial sale of the Bootleg CD.

98.     As a result of this unauthorized distribution and sale of Antonenko's performance, Antonenko sustained resulting injury and damages.

99.     Wherefore, Plaintiff, Aleksandrs Antonenko, respectfully requests all such damages recoverable, including, but not limited to all such damages recoverable, including, but not limited to actual damages, the value of all gains, profits, advantages, benefits, and consideration derived by Defendants' from and as a result of their commercial use of Antonenko's name, voice, photograph and likeness, costs of the action, costs of the action, prejudgment interest, punitive damages, attorneys' fees, and for such other relief as this Court may deem just and appropriate against all Defendants.

## FIFTH CLAIM FOR RELIEF
### Conversion

100.    The allegations set forth in the introductory paragraphs describing the parties, the nature of the action and the general allegations are incorporated herein by reference.

101.    By agreeing to perform with Alieva for the purpose of recording the Demo CD, Antonenko conferred a benefit upon Alieva to which she was not otherwise entitled.

102.    The modest payment received by Antonenko for the performance was commensurate with the purpose, which was to create only a Demo CD.

103.    At no time did Defendants have any written agreement from Antonenko to commercially produce, market, distribute, and sell the Demo CD to the general public.

104.    At no time did Defendants have any written agreement from Antonenko to license his name, likeness or voice in any commercially produced recording for sale to the general public.

COMPLAINT

105.    Furthermore, no implied agreement or license could be inferred due to the circumstances in existence both before and after Defendants began converting Antonenko's property, such as the fact that:  Defendants were aware of the limited purpose of the performance by virtue of the initial invitation extended to Antonenko; the modest fee that he requested for the performance; the subsequent dinner in Berlin at which Muradov and Alieva requested the opportunity to promote and sell the Demo CD; Antonenko's refusal to entertain any business proposals offered by Muradov and Alieva; Antonenko's refusal to perform at any public venue with Alieva; and written and electronic communications between the parties whereby Delos and Muradov agreed to pay additional fees after being notified by Antonenko of the infringements and misappropriations of his name, likeness, image, and voice for commercial profit.

106.    Upon information and belief, Defendants planned to take possession of Antonenko's name, likeness, image and voice under the pretense of recording a Demo CD, but instead arranged to commercially produce, distribute, market, promote, and otherwise sell the Bootleg CD with the intent to benefit Defendants and deprive Antonenko of his rights.

107.    As described herein, Defendants acted with willful and conscious disregard of Antonenko's rights and interests, with the intent to benefit Defendants, and each of them, and with the intent to defraud Antonenko and deprive him of his rights, thereby entitling Antonenko to an award of punitive damages against Defendants in order to punish Defendants and to deter similar misconduct in the future.

108.    As a result of the conversion of Antonenko's property rights, Antonenko sustained resulting injury and damages.

109.    Wherefore, Plaintiff, Aleksandrs Antonenko, respectfully requests all such damages recoverable, including, but not limited to actual damages, the value of all gains, profits,

COMPLAINT

advantages, benefits, and consideration derived by Defendants' from and as a result of their commercial use of Antonenko's name, voice, photograph and likeness, costs of the action, prejudgment interest, punitive damages, and for such other relief as this Court may deem just and appropriate against all Defendants.

### SIXTH CLAIM FOR RELIEF
**Fraud**

110.    The allegations set forth in the introductory paragraphs describing the parties, the nature of the action and the general allegations are incorporated herein by reference.

111.    In January 2014, Muradov and Alieva made false representations to Antonenko intending to induce him to perform a duet with Alieva in Kaunas, Lithuania in July of 2014.

112.    More specifically, Muradov and Alieva represented that the purpose of the duet was to record a Demo CD to assist Alieva in securing future engagements in her operatic career.

113.    Furthermore, Antonenko was induced to accept a modest payment for the performance based upon the representations of Muradov and Alieva that the purpose of the recording was to create only a Demo CD, not a Bootleg CD thereof to be promoted, distributed and sold for commercial profit.

114.    In addition, Muradov and Alieva concealed their relationship to Defendants, Delos and Naxos, as well as their relationship to the conductor, Constantine Orbelian, who was working to promote Alieva under the Delos music label for commercial profit.

115.    At all material times, Defendants knew that their representations and omissions to Antonenko were false, because Defendants intended to commercially produce, distribute, market and sell a Bootleg CD (not a Demo CD) for profit.

COMPLAINT

116.    Antonenko had no reason to doubt the representations of Defendants, inasmuch as the recording of a Demo CD is customary in the music industry, and Alieva is a less experienced singer trying to advance her young career.

117.    Moreover, Antonenko was not aware of the relationship between the conductor, Constantine Orbelian, to any music label, nor was he familiar with Delos as a music label.

118.    For the foregoing reasons, Antonenko justifiably relied upon the representations and omissions of Defendants in travelling to Lithuania and agreeing to record the Demo CD.

119.    As a result of Defendants' false representations and omissions, Antonenko sustained resulting injury and damages.

120.    As described herein, Defendants acted with willful and conscious disregard of Antonenko's rights and interests, with the intent to benefit Defendants, and each of them, and with the intent to defraud Antonenko and deprive him of his rights, thereby entitling Antonenko to an award of punitive damages against Defendants in order to punish Defendants and to deter similar misconduct in the future.

121.    Wherefore, Plaintiff, Aleksandrs Antonenko, respectfully requests all such damages recoverable, including, but not limited to actual damages, the value of all gains, profits, advantages, benefits, and consideration derived by Defendants' from and as a result of their commercial use of Antonenko's name, voice, photograph and likeness, prejudgment interest, costs of the action, punitive damages, and for such other relief as this Court may deem just and appropriate against all Defendants.

## SEVENTH CLAIM FOR RELIEF
### Violation of Cal. Bus. and Prof. Code § 17200, et seq.

122.    The allegations set forth in the introductory paragraphs describing the parties, the nature of the action and the general allegations are incorporated herein by reference.

123.    Defendants have deceived and confused the public into believing that Antonenko authorizes, approves, and endorses the use of his name, voice, photograph, and likeness in the commercial distribution and sale of the Bootleg CD.

124.    Defendants' use of Antonenko's name, voice, photograph, and likeness to advertise, distribute, and sell the Bootleg CD is a violation of Cal. Civ. Code § 3344.

125.    Defendants' wrongful acts described herein constitute unlawful, unfair, deceptive, untrue, misleading, and fraudulent business practices within the meaning of Cal. Bus. & Prof. Code § 17200, et seq.

126.    Antonenko has been damaged and will continue to be damaged by Defendants' unlawful, unfair, and fraudulent business practices, as described above.

127.    Antonenko is entitled to permanent injunctive relief under Cal. Bus. & Prof. Code § 17203 prohibiting Defendants from continuing the practices described above, and restoration of Antonenko's interest in his personal property rights, including, but not limited to, his identity, voice, name, and likeness as misappropriated by the Defendants within the Bootleg CD.

Wherefore, Plaintiff, Aleksandrs Antonenko, respectfully requests permanent injunctive relief under Cal. Bus. & Prof. Code § 17203 as described herein, restoration of Antonenko's interest in his personal property rights, including, but not limited to, his identity, voice, name, and likeness as misappropriated by the Defendants within the Bootleg CD, and for such other relief as this Court may deem just and appropriate against all Defendants.

### EIGTH CLAIM FOR RELIEF
### Quasi-Contract

128.    The allegations set forth in the introductory paragraphs describing the parties, the nature of the action and the general allegations are incorporated herein by reference.

COMPLAINT

129.    The sole agreement between the Plaintiff, Antonenko, and the Defendants was for the creation of the Demo CD to be utilized by Alieva for non-commercial purposes to help advance her career.

130.    For his role in this endeavor, Antonenko was compensated.

131.    Subsequently, when Defendants sought his permission to distribute and/or sell the Demo CD in a commercial manner, Antonenko specifically refused to grant permission for the commercial distribution and/or sale of the Demo CD.

132.    Thereafter, on or after June 9, 2015, Defendants nevertheless began distributing and/or selling copies of the Bootleg CD to the general public without Antonenko's consent.

133.    The Bootleg CD that was produced and that has been, and continues to be, distributed and/or sold by Defendants has resulted in financial benefit to the Defendants at Antonenko's expense.

134.    Defendants used Antonenko's identity, and thereby appropriated Antonenko's name or likeness, to their commercial advantage without Antonenko's consent.

135.    As a result of this unauthorized distribution and/or sale of Antonenko's performance, Defendants were unjustly enriched at Antonenko's expense.

136.    In view of the underlying circumstances surrounding Defendants' actions, it would be unjust for Defendants to retain the spoils relating to the commercial distribution and/or sale of the Bootleg CD.

137.    Accordingly, Antonenko, alternatively, seeks to have this Court imply a contract without regard to the parties' intent in order to avoid the unjust enrichment by the Defendants and order restitution.

COMPLAINT

1  Wherefore, Plaintiff, Aleksandrs Antonenko, respectfully requests restitution relative to

2  the unjust enrichment of the Defendants through their actions, including, but not limited to, the

3  value of all gains, profits, advantages, benefits, and consideration derived by Defendants' from

4

5  and as a result of their commercial use of Antonenko's name, voice, photograph and likeness,

6  and for such other relief as this Court may deem just and appropriate against all Defendants.

7

8  **DEMAND FOR JURY TRIAL**

9  Plaintiff, Aleksandrs Antonenko, hereby demands a trial by jury on all issues so triable.

10

11  Dated: June 9, 2017

12                                             s/ Kristina N. Girard

13                                        Kristina N. Girard (State Bar No. 236762)
                                          JACKSON LAW INTERNATIONAL
14                                        1901 First Avenue, Suite 208
                                          San Diego, California 92101-2382
15                                        Telephone: 619-663-5620
                                          Facsimile: 619-663-5621
16                                        E-Mail: kgirard@jacksonlawinternational.com

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT